Your Honor, I'm going to reserve three minutes for rebuttal. My name is Gary Randall. My co-counsel, Mr. Workland, is with me on the briefs. This is a fun case. It's a tax case, but it's a fun case. That's usually a contradiction in terms. Oh, Jerry Wallace made it fun when he was going. And I try to make it fun, too. This is one where there's really no appellate precedent. There's tax court cases that are not strictly on point, but give you an idea of where they're going. But there's no appellate precedent. This panel, or this court, the United States Court of Appeals, has actually had, I could find, two goodwill cases. One of which is unreported. It involved the goodwill of the Mustang Ranch. Now, that may have been a fun case. This is a dentist. I know. Going to the dentist is rarely a fun occasion. Well, you know, I grew up in northern Idaho, and we had a number of Mustang ranches. And the goodwill issue becomes very interesting. But if I try to do the analogy, I suspect I'm going to get in trouble. I suspect the court has a pretty good idea of what happened here. The government takes the position that when Dr. Howard, who was a dentist, a solo dentist, sold his goodwill, at the same time that his corporation, which was a C-corp, not an S-corp, when his corporation sold some of its assets, the government's position is that the corporation sold the goodwill. It was $550,000. Well, what made it his to sell? He had an obligation to the corporation not to compete. That's correct. And that's what the real value from the goodwill comes. If he goes into competition and the buyer doesn't have what the buyer thought he got, in this case, if the obligation is already there between Dr. Howard and the corporation not to compete, why isn't that the corporation's asset? Our position, Your Honor, is that it is inherently impossible for a corporation to own professional goodwill. That the covenant not to compete gives the goodwill value. And, in fact, the thing that really gave the buyer... Then why is it impossible for the corporation to own it? Because the corporation already had a covenant not to compete from Dr. Howard. It was in the position to convey that. Now, they may have done the paperwork in such a way that the corporation gave that back to Dr. Howard. But either way, that would seem to be a taxable event. The problem, Your Honor, is that I don't understand how a corporation can even own goodwill, covenant not to compete or otherwise. Why can't it own goodwill? I mean, professional corporations are sort of hypothetical. But if you're going to create the instrument and make that the way Dr. Howard chose to exercise his practice, and if that package included a covenant not to compete, which it did, then why can't the corporation own the covenant not to compete, which is really the source of the goodwill? Your Honor, that may well be. I disagree, respectfully disagree, because I think a person can own goodwill. I don't think a corporation can own goodwill. What does goodwill mean in practice? Goodwill in a one-person corporation, I think, means that there's going to be a group of clients, patients, if you will, who are going to come to you and say, you know, you did a pretty good job on me, and I like you, and I want to come back. I think that is partially goodwill. Well, what's the interest of the buyer of the practice? What can the buyer acquire, since that's apparently the value we're talking about in the purchase price for the practice? The buyer is going to want to acquire a covenant from the professional not to compete with the buyer. Okay, but if the corporation already owns that covenant, why can't the corporation convey that to the buyer and extract the value for it? In this case, the corporation did not convey anything to the buyer except what we call hard assets. Well, that's because of the way the deal was papered. But before the transaction, the corporation owned that covenant not to compete. What would have prevented it from conveying it to the buyer? And if instead the corporation conveyed it back to Howard or simply canceled it, isn't that a transfer of value to Dr. Howard that's a taxable event? Your Honor, I don't believe under Washington law that I can convey a covenant not to compete from one entity to another. If I liquidate a corporation. Do you have any authority to support that proposition? I did at one time. Indeed, and I'll ask both parties of this, because it seems to me defining the property interest here is a matter of state law, and yet everybody seems to be discussing tax court cases, not Washington state law cases. So what authority should we look to to figure out what this interest is? I would think you'd look at the matrimonial cases, which define pretty much in Washington when there's a split up by a couple. You're going to find the cases saying, gee, we'll say the husband's the professional. The professional has goodwill. It is a community asset, community property asset. Well, I'm not sure the matrimonial cases are a very good analogy, because the concern there would be that the professional hides away, only it's not hidden, puts in the corporation assets which in practical terms belong to the marital unit. So the person whose interests are affected there is the divorcing spouse. In this case, Dr. Howard shows how to structure his practice. It's the practice that's being sold. I'm not sure why he shouldn't be required to live with the implications of what he set up in the first place. One problem, Your Honor, is that the corporation didn't convey any goodwill. The money went to Dr. Howard. Dr. Howard, I think the corporation- That's just the way that the people in the transaction designed it. They can design it how they want to, but if that's not consistent with how the practice was designed before, and it was designed before as a professional corporation, with Dr. Howard saying he couldn't compete with the corporation. Which, by the way, he could obviously have terminated that covenant at any time. How? He's on both sides of the transaction. Well, okay, because he controls the transaction, but that gets back to my question. If he takes the tax benefit of professional corporation form, why doesn't he suffer the liability of it? One of the liabilities or one of the penalties of being a professional corporation, C corporation, is that if you don't distribute all of your income in the form of bonuses or deductible items, you're going to get a double tax. Now, that is one of the liabilities of being in corporate form. I don't think that having a company- What's the benefit? Did he derive any tax benefits from operating as a C corporation? There must be a reason why he chose to do it that way. Sure, Judge. What happened, of course, was in those days you could not get the same pension plan benefits that you could if you were a corporation. You got better pension plan benefits than if you were solo. So at that time, there was a lot of corporations that did form professional service corps. When you say better benefits, you mean tax-wise? Tax-wise. You would get a larger deduction for your pension plan than you would if you were solo. And you could get a better tax deferral in the 70s and 80s, right? By far. So having then made himself available to the advantages of using the corporation, and having entered into the agreements that he did with the corporation, then why should we try then to allow him now out of what he got himself into? I think he may have gotten himself out of that when he and the corporation signed the asset purchase agreement and recognized that the covenant not to compete did not exist. The corporation did ratify the asset purchase agreement. There's no mention made of a covenant not to compete in there. There's only a covenant not to compete we see. Is the covenant not to compete between him, which I think has got the most value, and the new purchaser? Because he's on both sides of the transaction, he can contractually terminate, may go away, the covenant not to compete. But then why isn't that a taxable event? Because the corporation is gifting him something that turns out to have substantial value. And, in fact, if the government had taken that position in this case, which they did not. Well, I'm not sure in practical terms they have, because in the end they called the value that's... The money paid for goodwill pretty much is tied to the covenant not to compete. Because if he opens up next door, the new dentist is out of luck. All those patients come to him. And so the value assigned as goodwill is pretty much the value in that covenant. Well, that's value the corporation is giving to him by terminating it, if they terminate it before the transaction rather than try to transfer it itself to the new buyer. So why isn't that a taxable event in the form of a corporate dividend? In this case, the government didn't take the position that that was the corporate dividend. In this case, the government took the position that the corporation sold the goodwill, even though there's nothing in the contract that says it sold the goodwill. Is there anything different between the two? I think if the service wants to argue the dividend theory, I would like to have had an opportunity to... Well, they did argue the dividend theory. They called the dividend the goodwill value as established by the purchase agreement as opposed to the value of the covenant not to compete. I'm not sure those are any different. I think if the service had said, gee, you had a dividend as a result of terminating the covenant, I might have argued the case a little differently. They took the position that the goodwill was sold by the corporation. They didn't take the position that there was a dividend of the goodwill to Dr. Howard. I think those are two different concepts. Had they taken both positions, they would have had a better case. Is there an economic difference between the two? There would not have been an economic difference. But, again, I would have had a better chance to argue if I knew the other side of that. The other thing, of course, that strikes me is that the covenant not to compete that he signed with the new purchaser really is the one that gives anything the value. Because, lo and behold, if he hadn't signed that covenant not to compete with the new purchaser, even if the corporation still had the goodwill or tried to convey the goodwill to Dr. Flynn, that goodwill wouldn't have been worth much. It's the covenant not to compete between Dr. Howard and the new purchaser that has the value. Now, if I had been in the service, I was an IRS lawyer for years, if I had been in the service, I would have taken the position that his covenant not to compete, which he only valued at $13,000, I would have taken the position that that thing was worth maybe $100,000 or $200,000. It's not the position they took. The position they took was that the corporation owned the goodwill because of an old covenant with him. The position they took was that the corporation sold the goodwill and that then, in effect, distributed the money as a dividend. That's not the way the transaction worked. Can I ask you a question? I mean, it's not clear in my mind. You say that what was of value to the purchaser was the covenant to compete that he entered into with them. I would have thought that if I were buying this business, I would have thought that what was valuable to me was his agreement to continue working for three years. I think it might have been one year. Was it one year? But you're right. That was important. It was two years. Was it two years? We'll compromise. We'll take two. It was two on a part-time basis. He's a southern Idaho guy. He knows. And it was paid through the corporation. In other words, the corporation sold that, the new dentist paid the corporation, again distributed to the doctor through the corporation. That's correct. Which, again, makes it look like the corporation is in control here. The corporation is in control, but I think you have to go back to the basic philosophical question of whether a corporation can own a professional's goodwill. In Washington, for instance, a dental practice cannot, a dental practice has got to have the name of the existing dentist in it. Our position, Your Honor, and I'm going to keep back at least two minutes, our position, Your Honor, is it's simply impossible for a corporation to own personal goodwill. Well, he sold it. He sold his goodwill. He sold it to a corporation, didn't he? The new entity was a professional corporation as well. He sold his goodwill to a corporation. So the corporation must have owned it. I think that becomes a little different because you're going to amortize that goodwill. Your Honor, I'd like to reserve, I think, two minutes and ten seconds. Whatever you've got left is yours. Thank you. We'll hear from the government. May it please the Court, I'm Regina Moriarty and I represent the United States. You seem to really understand the government's position here. I think some of the difference might come in distinguishing between goodwill and earning capacity. He talks about not being able to transfer this goodwill of the dentist until you can't transfer his medical license or his individual skills. But the goodwill of the dental practice is something more than that, something different than that. Here's a dental practice that's been there for 20-plus years. Well, but it's all dependent on him. If he were to walk away and retire to Idaho, that goodwill would just be worthless. Actually, there's a... I mean, the goodwill people are coming to this dentist and that's because they like him and they come back and they recommend. If somebody says, you know, a good dentist, they recommend to their friends and he is really the critical source. I mean, just from my own experience, when my dentist retired, before he did, he worked with the people who bought his practice for about, I would say, a couple of years. In effect, he was maybe not in a legal sense, but he was sort of transferring his goodwill to them. But a dental practice is more than just the dentist. It's the hygienist, it's the assistants, it's the receptionist. Dr. Finn, in this case, testified that it was very important for him to retain those other employees. In fact, when I go to the dentist... That's because it gave it the aura of being the same. Right, but last time I went to the dentist, I was there 45 minutes and four or five minutes were with the dentist and all the rest of the time was with the hygienist, who is, to me, more important than the dentist. But there's actually a Washington State court case that's cited in our briefs. It's one of the divorce cases in marriage of Hall, and it actually says that if a practicing professional dies, retires, or moves, that there's still some goodwill that's marketable. There is, but what's the value of it? It would be a lot less. Sure. And it would be, I mean, if you're calculating the tax, the tax would be less, although this is a fight over $60,000. I don't even understand how it pays to litigate this. Did you try and settle it? It was not put through the mediation program here, and I wasn't involved in the district court level. I didn't mean to disrupt, to make you lose your thought, but I did have one other question. This non-compete agreement that he had with his own corporation was for all practical purposes terminable at will, not so much because he and the corporation were one, but by the terms of the agreement that he had entered into. All that was required was that he give 90 days' notice. So how much really was, assuming the corporation was the owner of this goodwill that attached as a result of his presence, if he could just essentially walk out and start his own practice in three months, 90 days, how much is that worth? Is that worth $594,000 or whatever? Well, because that's not what happened here. He didn't terminate it. There was never any agreement in writing. No, no, but we're trying to put a, as I read it, we're trying to put a value on it, and it seems to me that if all the corporation had was an agreement with him not to compete, which he could terminate by virtue of the terms of the agreement, not because for all practical purposes were one, but by virtue of the terms of the agreement he could get out of it within 90 days, if it was for all intents and purposes. The goodwill value to the corporation wasn't that great. It really was his. That's what bothers me about this, and I just wanted to give you a chance. Because he didn't terminate it, the IRS did not get into the valuation. This really isn't a valuation case. It's a classification. Is it a personal goodwill or a corporate goodwill? And when there are sales like this between two arm's-length dentists, the government usually doesn't get in and say, oh, you should have contributed this much to the covenant not to compete or this much to goodwill. There have competing interests there in how they'll treat them. And so when the purchaser is buying the dental practice in this case, he will depreciate the goodwill and the covenant not to compete over differing terms. And so the IRS kind of figures in most cases, unless it's extreme, that we're just going to let the parties decide the value of those items. Are you really arguing that we ought to adopt a per se rule that in the case where a corporation has a contract right with its employee and it's in a personal service corp, that as long as all they have is a contract, that he's the employee but no other contracts, that the goodwill is in fact his, but that otherwise if they enter into any kind of a non-compete agreement or any other agreement over and above simply the employment agreement, that the goodwill becomes the corporation's? Is that what the IRS is arguing here? I think that we're not going that far because we don't need to. I think what we're saying in this case is that based on all the tax court cases, that when there's a covenant not to compete in an employment agreement that spells out the control. Well, I guess my worry, just a minute, my worry here is that I've read a lot of tax court cases and not any other cases that suggest that where you're going is right. But if the Ninth Circuit adopts a rule that says in this particular situation, since this doctor entered into a non-compete agreement and this doctor was bound by the non-compete agreement and never terminated any non-compete agreement until the end, that that makes a difference. That there's a contract or a similar indication from the person or entity showing the person recognizes the corporation's controlling position. So it seems to me that if I enter a ruling in this particular case, what I'm in fact telling the whole world from Alaska to Hawaii is, don't enter into a non-compete agreement. Is that what you're asking me to do? No, I think we're asking you to stick to the facts of this case. But I do recall reading, and I'm sorry, I don't recall the name of it, a case where there was not a non-compete agreement and the IRS still took the position based on other facts surrounding the fact that a doctor couldn't get malpractice insurance, so he effectively couldn't work. Well, I don't know any corporate agreement for these non-professionals, having done this kind of in Idaho, where the corporation doesn't buy all of the stuff that the doctor needs. I mean, that's the normal. And it seems to me then the only real difference in this case from the other cases that I would normally see is that there's a non-compete agreement that the corporation has with the doctor. So if the corporation doesn't have a non-compete agreement with the doctor, what you're saying is then he keeps his goodwill. But if he ever enters into this non-compete agreement, he loses it? Is that what you're asking me to go? I think that would be a logical way to follow through some of these cases. I'm just not, I can't commit to say the IRS would never look at other facts. Well, what bothers me again, and maybe I didn't word it the right way, is I think even if you accept the premise that if there's a non-compete agreement it means that for all practical purposes the corporate entity owns the goodwill, is that I don't really see this. It's one thing to talk about a non-compete agreement that says for the next 25 years and another that talks about a non-compete agreement that's terminable within 90 days. It seems to me that that's the equivalent of an at-will agreement and the 90 days being necessary maybe to get it out of the rule that there was no consideration for the agreement, but for all practical purposes that's an at-will arrangement and really I don't see that it gives the corporation very much. So that's one of the problems that I've had with a kind of a per se rule that if there's a non-compete agreement it belongs to the corporation, that we're not looking at the non-compete agreement in this case, which is essentially worthless to the corporation. Well, I think that might go back to Judge Clifton's point that what happened if they had terminated it and what would the value be? The corporation would have had all of that goodwill up to a certain point and would that have been a dividend at that point? I haven't seen any case law on it, so I don't know the answer to that off the top of my head. But what you have here is more than the covenant not to compete. You have the employment agreement. You have 20-plus years of- Well, the employment agreement is also subject to the same termination clause. We're basically dealing with an employment at will and a no-compete at will that's essential and that really gives the corporation nothing and essentially makes him the repository personally of this asset. But the cases have held that you still recognize these types of agreements and so forth. I know, but I'm just trying to figure out a rationale for it. I mean, I can understand that if he entered into a 25- or 30-year agreement with the corporation not to compete and to work for them, that that would really have been in effect giving the corporation the goodwill that would otherwise be his. But the reality here is that it gave the corporation nothing, and your argument seems to be based on a per se rule about a covenant not to compete rather than- I guess I should say I view this as the equivalent of a no-agreement case. Well, but the facts here- I mean, he worked under this employment agreement and covenant not to compete, and the covenant compete was going to extend for three years after he gave up the corporation. So in that three-year period, what would have been left of any goodwill? It was significantly more than the 90 days in terminating things. It just seems to me if he set this up and used it to his advantages for tax reasons or liability reasons, he should continue to be bound by those agreements. Well, my recollection, it was for three years. It wasn't an absolute three years. Wasn't it three years from the time he owned the stock? Yeah, I guess when you dissolved the corporation or he sold it. So I posed a hypothetical saying, well, suppose it had been structured or the termination of the covenant not to compete had been recognized. Wouldn't it have the same effect? And the response from the Taxpayers' Council is yes, but that's not the position the service took. We didn't take that position because we didn't view that self-serving language in the purchase agreement that it was Dr. Howard's goodwill to be a termination provision. So the IRS didn't have to deal with that or didn't feel that it did. They still viewed the covenant not to compete as controlling who owned the goodwill. And that the corporation sold it. Both the corporation and the individual doctor signed that and both the covenant not to compete that was signed between Dr. Howard and Dr. Finn were both signed by Dr. Howard individually and by the corporation. They were both transferring that. I guess my worry about all of this is this. These personal service corporations are set up for certain reasons. They set them up for certain reasons in their tax way reasons as well as liability reasons as well as other reasons. The covenant not to compete is a part of the real set up so that you can, for the IRS on other reasons, say it's truly a corporation, that it has nothing to do with me just getting my money. And therefore you put all this stuff together and you're really trying to work through the regulations. And now the IRS comes back and says, if you do that to truly work through the regulations, what we're really saying is if you add the covenant not to compete, automatically your goodwill is done. That's what it seems to me you're asking. Well, that's what the tax court cases have held. And the reason for that is because once you enter into that, you're transferring away to the corporation a certain value, saying that I will continue to work for you and I won't compete against you. It does seem illusory when it's just a single person, but if you were going to have, maybe he intended to add a different dentist. When he originally entered into this in 1980, his deposition said he was working at that time with Dr. Joss. They worked in the same office, but they had separate things set up. But you can see that you would definitely need a covenant not to compete if you were going to have more than one dentist involved. Could that be another reason why you would enter into such an agreement? I think you could come up with other reasoning as well, besides just the tax benefits. Any further questions? We'd ask that it be affirmed. Thank you. Thank you. Mr. Randall. Just a couple of points I'd like to hit. One of them is this covenant not to compete thing. You know, if he had, in the course of his practice, while the corporation still existed, decided to walk out the door or stay in the door and change over to a sole proprietorship next door, Larry Howard, DDS, I don't think that his corporation would have sued him on that covenant not to compete. I don't think he would have sued himself. I think that covenant is terribly illusory. And as the court has been concerned with, the flat rule that says if you have a covenant not to compete, the corporation owns the goodwill is a bit dangerous. The tax court case has never directly said, if you have a covenant not to compete, the goodwill is the corporation. If it's all illusory, why did he enter into the agreement to begin with? For the reasons Judge Smith picked up on, in those days, in order to convince the IRS that we had a valid corporation, people put everything, and by the way, the lawyer who drafted this, Jim Black, was a very good tax lawyer. Lawyers put everything that you could possibly find in a corporate form into their contracts. That is without really thinking about what the results might be. There are no tax court cases that directly hold that the existence of a covenant not to compete means that the goodwill belongs to the corporation. The cases have said, well, there was no covenant not to compete, so there was no goodwill in the corporation. None of them directly reach the question I want this panel to reach, is that that covenant not to compete does not transfer personal goodwill over to a corporation. The corporation does have goodwill, institutional goodwill. Bill Faye said that in the Showback case. He said, you know, the client list, that kind of stuff, the letter of introduction, that belongs to the corporation, and the corporation was paid for that. This court in the Furrer case recognized there can be both institutional goodwill and professional goodwill. We would ask this panel to do exactly the same. Does the court have any questions? When I was in practice, I was never a professional corporation, even though I had partners' work, because I didn't understand it and didn't want to go into it. Now you're going to try to make me understand it, huh? You could consult Randy Roth. I thank both lawyers for their argument in what turned out to be a surprisingly entertaining case about taxes and dentists. The case just argued is submitted.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj